IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAFEWARE, THE INSURANCE AGENCY, Inc., :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>LYNDON SOUTHERN INSURANCE COMPANY, *et al.*, :<br>:<br>Defendants. : | Case No. 2:18-cv-1061<br><br>JUDGE ALGENON L. MARBLEY<br><br>Magistrate Judge Deavers |

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

### I.  INTRODUCTION

This matter is before the Court on Plaintiff Safeware, The Insurance Agency Inc.'s ("Safeware") Motion for Temporary Restraining Order. (ECF No. 2). Safeware asks that the Court enter:

(1) A Temporary Restraining Order requiring Defendants Lyndon Southern Insurance Company, Insurance Company of the South, Response Indemnity Company of California, and 4warranty Corporation ("Defendants") to take all steps necessary to immediately continue funding the valid and approved claims pursuant to Defendants' Contractual Liability Insurance Policies with Safeware, and the consumers' Service Contracts;

(2) A Temporary Restraining Order preventing Defendants from interfering with claims submitted pursuant to the CLIPs with Atlantic Specialty Insurance Company and Dealers Assurance Company; and

(3) Such further relief as the Court deems necessary and just.

(ECF No. 2-1 at 20). Having considered the Motion, as well as the arguments of counsel at the Rule 65.1 Conference at 3:30 pm on September 14, 2018, the Court hereby **GRANTS** the Motion and **ORDERS** relief as articulated in Part IV, *infra*.

1

## II. BACKGROUND

Plaintiff Safeware sells extended service contracts for consumer goods, such as home electronics and appliances. (ECF No. 2-1 at 1). It paid Defendants Lyndon Southern Insurance Company, Insurance Company of the South, Response Indemnity Company of California, and 4warranty Corporation (collectively, "Defendants") premiums to purchase insurance policies to pay for the services it was obligated to provide under the service contracts, such as repairs. (*Id.*). Safeware has represented that it has fully paid all premiums under the service contracts. (*Id.* at 9). Safeware further represented that it does not have the resources to pay for the repairs itself, and thus, timely payment by Defendants is critical to servicing consumer needs under the service contracts. (*Id.*).

At some point, Defendants began to become concerned with the loss ratios under the contracts. To that end, in June 2018, Defendants commenced an arbitration action pursuant to the parties' mandatory arbitration agreement. (*Id.* at 8). The arbitration on the underlying claims remains pending, but the three-member arbitration panel is not yet fully constituted and likely will not be until at least September 20, 2018. (*Id.* at 1).

Meanwhile, on September 10, 2018, Defendants notified Plaintiff that it would stop funding claims under the service contracts effective immediately. (*Id.* at 1-2). Plaintiffs filed the pending Motion for Emergency Injunctive Relief on September 14, 2018, seeking continued funding of the claims. (*Id.*).

The crux of the question before this Court in resolving the Motion for Temporary Restraining Order is whether Defendants were entitled cease funding the claims as a form of self-help pending the ultimate determination of the underlying question by the arbitration panel.

The relationship between the parties is governed by the Provider Agreement. (*Id.* at 4). Defendants argued at the Rule 65.1 Conference that Section 1(c) of the Agreement permits self-help because it provides that Defendants' obligation to pay is "expressly conditioned upon the [Plaintiff's] compliance with all of the terms, conditions, and covenants of th[e] Agreement. . . ." But, as the Court noted at the 65.1 Conference, that provision does not speak to the *remedy* Defendants are entitled to pursue should they determine the agreement has been breached. In any case, the parties do not dispute that they have mutually assented to mandatory arbitration – indeed, it was Defendants who initiated the arbitration action – so it cannot be true that Section 1(c) entitles Defendants to take whatever remedy they deem appropriate should they unilaterally determine that the agreement has been breached.

Defendants also argued that the Provider Agreement entitles them to withhold payment under the contracts as a form of self-help should they determine that Plaintiff was mishandling claims. It is true that Section 6(c) of the Provider Agreement provides that Defendants "shall have the right at any time, whether before or after the termination of this Agreement, to assume change and control of all claims handling, adjudication, and payment of claims under the Contracts . . . if the Company's loss ratio on the contracts . . . exceeds 90% of the earned premium." However, Defendants made no representation to the Court that the 90% threshold had actually been exceeded. (Hr'g Trans.).

In short, neither Section 1(c) nor 6(c) of the Provider Agreement entitle Defendants to withhold payment, as a matter of contract. The question, then, is whether the Court must award a temporary restraining order *obligating* payment under the contract under Federal Rule of Civil Procedure 65(b).

## III. LAW AND ANALYSIS

Federal Rule of Civil Procedure 65(b) requires a Court to balance four factors in determining whether to grant a TRO: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of an injunction will result in substantial harm to others; and (4) whether the public interest will be advanced by the injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). The Court, however, "need not reach all of the factors," and a focus on "[t]he irreparability and immediacy of harm" is consistent with the commands of Rule 65(b). *Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (Marbley, J.).

If the Court does not issue a TRO enforcing the status quo, Safeware will suffer both immediate and irreparable harm. Neither party contests, at this juncture, that Safeware could not independently compensate customers for claims under the service contracts. Thus, consumer claims under the service contracts would immediately go unfulfilled. It is not difficult to imagine that Safeware's failure to compensate consumers for contractual claims will lead to instant and irreversible diminution of customer goodwill. Generally, "if the nature of the plaintiff's loss would make damages difficult to calculate," a plaintiff's "injury is not fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). And an "injury to reputation" is "difficult to calculate." *United States v. Miami U.*, 294 F.3d 797, 819 (6th Cir. 2002). In addition, losing "customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp.*, 973 F.2d at 512. The Court is therefore satisfied that the Rule 65(b) requirements are met.

## IV. CONCLUSION

The Court therefore **ORDERS** that:

(1) Defendants take all steps necessary immediately to continue funding the valid and approved claims pursuant to Defendants' Contractual Liability Insurance Policies with Safeware, and the consumers' Service Contracts; and

(2) Defendants shall process claims according to the pattern and practice of the parties up to September 6, 2018.

Plaintiff must post a bond of **$10,000.00** by **5:00 p.m. on Tuesday, September 18, 2018.**

The Court will hold a telephonic status conference on **Monday, September 24, 2018** at **11:00 a.m.** to discuss the status of this matter.

This Temporary Restraining Order will remain in effect until either the underlying issue is raised with the arbitrator or until the adjournment of the Preliminary Injunction hearing, whichever comes first. The Preliminary Injunction hearing will be held on **Friday, September 28, 2018 at 10:00 a.m.**, before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Room 331. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

The Court notes explicitly that it expresses no comment on the merits of the underlying litigation. This Order shall not be used for claim or issue preclusion or for res judicata purposes in any future proceeding.

## V. BRIEFING

Plaintiff must file its Motion for Preliminary Injunction by **September 24, 2018.** Defendants' response in opposition to the Motion for Preliminary Injunction must be filed on or before **September 26, 2018**. Plaintiff must file any reply in support of its Motion by **5:00 p.m.**

on **September 27, 2018**.  The focus of the parties' briefing should be the four factors the Court will consider in determining whether a Preliminary Injunction is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

An appendix outlining the briefing schedule and procedures to be followed at the Preliminary Injunction hearing follows this Order.

**IT IS SO ORDERED.**


       **_s/Algenon L. Marbley_**
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**


**DATED:  September 17, 2018**

# APPENDIX

## I.  BRIEFING

Plaintiff must file its Motion for Preliminary Injunction by **September 24, 2018**. Defendants' response in opposition to the Motion for Preliminary Injunction must be filed on or before **September 26, 2018**. Plaintiff must file any reply in support of its Motion by **5:00 p.m.** on **September 2017, 2018**. The focus of the parties' briefing should be the four factors the Court will consider in determining whether a Preliminary Injunction is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012). The briefs shall comport with the length requirement set forth in the Local Rules. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

## II.  PROCEDURES

**Counsel Tables**

Plaintiff will occupy counsel table next to the jury box. Defendant will occupy counsel table across from Plaintiff and, to the extent necessary, the pews in the gallery.

**Appearances**

Counsel will enter their appearance with the Court Reporter and the Courtroom Deputy Clerk before the start of the opening session of the hearing.

**Addresses By Counsel**

Counsel will address the Court in the following manner:

    (a)    All addresses to the Court will be made from the lectern facing the Court.

    (b)    Counsel shall stand when addressing the Court for any reason.

**Objections**

Counsel will stand when making an objection and will make the objection directly and only to the Court.

When objecting, state only that you are objecting and the succinct legal basis for your objection. Objections shall not be used for the purpose of making speeches, repeating testimony, or to attempt to guide a witness.

Argument upon an objection will not be heard unless permission is given or argument is requested by the Court. Either counsel may request a bench conference.

**Decorum**

Colloquy, or argument between counsel will not be permitted. All remarks shall be addressed to the Court.

Counsel shall maintain a professional and dignified atmosphere throughout the hearing.

During the hearing, counsel shall not exhibit familiarity with witnesses or opposing counsel and shall avoid the use of first names.

During opening statements and final arguments, all persons at counsel table shall remain seated and be respectful so as not to divert the attention of the Court.

Do not ask the Court Reporter to mark testimony. All requests for re-reading of questions or answers shall be addressed to the Court.

**Demonstrative Evidence**

If any sketches, models, diagrams, or other demonstrative evidence of any kind will be used during the proceeding, they must be exhibited to opposing counsel two days prior to the hearing. Objections to the same must be submitted to the Court prior to the commencement of the hearing. Demonstrative evidence prepared solely for the purpose of final argument shall be displayed to opposing counsel at the earliest possible time but in no event later than one-half hour before the commencement of the arguments.

Counsel must supply his/her own easel, flip charts, etc. for the hearing.

**Exhibits**

Counsel will assemble and mark all exhibits and deliver them to the courtroom deputy prior to the commencement of the hearing. Plaintiff's exhibits will bear the letter prefix P followed by Arabic numerals and Defendant's exhibits will bear the prefix D followed by Arabic numerals.

Counsel should keep a list of all exhibits and should supply the Court, courtroom deputy and opposing counsel with a copy of the same.

Each counsel is responsible for any exhibits secured from the courtroom deputy. At the end of each hearing session, all exhibits shall be returned to the courtroom deputy.

The parties shall use three-ring tabbed notebooks for their exhibits which will be submitted two (2) days before the hearing. The parties shall provide one (1) copy of their tabbed exhibit notebook(s) to opposing counsel, and three (3) copies to the Court—one each for the Judge, the law clerk, and the courtroom deputy (for use at the witness stand).

Exhibits which are produced for the first time during the hearing, as in the case of exhibits used for impeachment, shall be tendered to the courtroom deputy for marking and then displayed to opposing counsel.

**Sanctions**

The parties and counsel shall comply fully and literally with this pre-hearing order. The Court will consider the imposition of appropriate sanctions in the event of non-compliance, including monetary sanctions, the dismissal of claims or defenses, or the exclusion of evidence. Fed. R. Civ. P. 16(f).

This order supersedes all previous orders in this case to the extent previous orders are inconsistent with this order.

The parties shall address questions about this Order to the Court's Law Clerk, Lauren Bateman, at (614) 719-3262 by way of a telephone conference with counsel for all parties participating, or with fewer than all counsel participating with express permission of non-participating counsel. Or, the parties may contact Ms. Bateman at lauren_bateman@ohsd.uscourts.gov, by way of email with counsel for all parties carbon-copied, or with fewer than all counsel carbon-copied with express permission of non-participating counsel.